## McCaffrey's Estate.

*Power of Register and Register's Court to revoke Letters of Administration.*

The register has power to revoke letters of administration *cum testamento annexo*, improvidently granted against the rights of those legally entitled thereto; and where, on appeal, and hearing *de novo*, the decision of the register is affirmed by the Register's Court, it matters little whether the register acted first in the revocation, or not.

APPEAL from the Register's Court of *Philadelphia county.*

This was an appeal by Byron Woodward, from the decree of the Register's Court affirming the decision of the register of wills, in revoking the grant of letters of administration on the estate of Thomas McCaffrey to the appellant, and dismissing his appeal from the register to the Register's Court.

Thomas McCaffrey died in 1832, leaving a widow and two children (minors), having made a will in which he appointed Michael Clark and Daniel Hughes executors. This will was duly proved in August 1833.

On the 22d of February 1860, Mark McCaffrey, the son of deceased, executed a paper, in which he renounced his right to administer his father's estate *de bonis non cum testamento annexo* in favour of Byron Woodward, whereupon letters were granted to Mr. Woodward in due form.

On the 10th of October 1860, Mrs. McCaffrey and her daughter, who was then Mrs. Kelly, presented their petition to the register of wills, setting forth the death of Thomas McCaffrey, and. their relationship; the making and probate of his will, and the, death of the executors named in it; the right of the widow and children to administer; the fact that letters testamentary were granted to Byron Woodward without notice; and the willingness of the widow to take upon herself the administration of the estate; and praying for a citation to said Woodward, requiring him to appear and show cause why the letters so granted should not be revoked.

To this, Mr. Woodward filed an answer October 13th 1860, reciting a devise of deceased's real estate, for the use of his widow and children; the refusal of the widow and daughter to permit the son to have any control of the premises; that to secure the rights of the son these letters were taken out, of which the widow and daughter were informed a few days after their date. That hearing no objection from them, he advertised the real estate of deceased for sale, of which the widow and daughter had notice, without objection; but that she attended the sale, gave notice to those in attendance that the property

[McCaffrey's Estate.]

was hers, and refused to deliver possession to the purchaser. That at a second sale this notice was repeated by her counsel; in consequence the person to whom the property was struck down, refused to pay the purchase-money. That the respondent, to test the validity of the widow's title, had commenced an action of ejectment against her, to which she, by her counsel, had appeared and pleaded not guilty, and that the cause was set down for trial October 16th 1860. That the widow is very old, despotic, and incompetent; that her silence is a ratification of his appointment, and that her position in relation to the property is hostile to the interests which she should regard as administratrix of her deceased husband, &c. He further answered, that since he had taken out letters, and since the petitioner had full knowledge of the fact, he had a great deal of trouble, and had been put to a great deal of expense, and, as administrator, had incurred several liabilities. Wherefore, &c.

On hearing the case, the register decided that the letters of administration had been improperly granted by him to Mr. Woodward, who thereupon appealed to the Register's Court, where the action and decision of the register was affirmed, and the appeal of Mr. Woodward dismissed.

The case was then removed into this court, where the following errors were assigned:—

1. The Register's Court erred in affirming the action and decision of the register, in revoking the grant of letters of administration to the appellant, and in dismissing his appeal to said court.

2. The Register's Court erred in not decreeing that the action of the register in revoking the grant of letters to the appellant, was erroneous and without authority.

3. The appellees ratified and confirmed the grant of letters to appellant, and thereby estopped themselves from contesting his right to the same.

4. By the great *laches* and long acquiescence of the appellees, they waived their right (if any they had) to object to appellant's right to administer.

*Amos Briggs*, for appellant, argued that the register had power to appoint *any fit person at his discretion*, where the persons entitled to administration under the act *refuse* or are *incompetent*. The son *refused*, the widow and daughter were *incompetent*.

1. They claimed to be exclusive owners of the property: Bieber's Appeal, 1 Jones 163.

2. The unadministered property of decedent is the subject of dispute between the widow and daughter on one side, and the son on the other: Bieber's Appeal, 1 Jones 163; Hassinger's Appeal, 10 Barr 455; Cornpropt's Appeal, 9 Casey 538.

[McCaffrey's Estate.]

Any irregularity in omitting to give them notice in the first instance, was waived and cured by their recognition of appellant's right to administer: Fehr v. Reich, 12 Casey 472.

The power to revoke letters of administration is lodged only with the Register's Court: Bieber's Appeal, 1 Jones 162.

*John Blackburn*, for appellees.—These letters were improvidently granted to Mr. Woodward, who does not come within any of the classes pointed out by the Act of March 15th 1832, § 22.

Mary Kelly, claiming no adverse intent in the estate, cannot be passed over, and letters granted to a stranger: Williams's Appeal, 7 Barr 259; McClelland's Appeal, 4 Harris 110, 115.

The register had power to revoke them for cause. That the ordinary in the English Ecclesiastical Court has this power, has long since been settled. In Pennsylvania, the register is a judge: Loy v. Kennedy, 1 W. & S. 396. Every court may rectify mistakes into which they may have been led by misrepresentations of parties: Strange 911. In some instances the register has been held bound to revoke letters: Williams's Appeal, 7 Barr 259; McClelland's Appeal, 4 Harris 110; Bieber's Appeal, 1 Jones 157; Cornpropt's Appeal, 9 Casey 538.

The opinion of the court was delivered, March 11th 1861, by

THOMPSON, J.—The register revoked the letters of administration *cum testamento annexo*, previously granted to the appellant, on application of the widow and daughter of the deceased; and on appeal the Register's Court affirmed the decision. The case is now here on appeal from that decision.

The ground of this proceeding was that the letters had been improvidently granted to the appellant, without notice to and in contravention of the rights of those legally entitled to administration. This was for cause antecedent to the grant of letters, and if not directly within the Act of Assembly of 1832, has been sanctioned by practice: Hood on Executors 118; Bieber's Appeal, 1 Jones 157; Boyd's Appeal, antè, 246.

But when, as here, the matter is brought before the Register's Court on appeal, and a hearing *de novo* is had, I see little room to cavil about the matter, whether the register acted first or not. Undoubtedly it might be more satisfactory, if he should first issue his citation to the parties, and appoint a hearing before a Register's Court. But is not this achieved by an appeal to that court in case of dissatisfaction with the register's act? We have no doubt but that a Register's Court can vacate letters of administration: of this there can be no doubt: Stoever v. Ludwig, 4 S. & R. 201. And here they affirmed the act of the register in doing so, which is in effect the same thing.

There was no testimony in the case. And the appellant's

answer to the citation required proof of the alleged facts, such as notice to those entitled by law to administer; acts of acquiescence; recognition by them—expenses incurred by the appointee, want of qualification of the mother and daughter; their claims on the estate, &c. There was no proof on these points, nor evidence that the answer was to be taken as proof. The movers in the matter of revoking the letters were only bound to show their title to administration, and that they had not parted with it. This they set forth in their petition for the revocation. It was admitted by the answer, and the facts alluded to, alleged by way of avoiding the claim to administration. These facts should therefore have been proved, and I suppose the Register's Court meant this, when on the appeal they say "the only question we are called upon to decide" is whether the register has power to revoke letters of administration, or whether such revocation must be made by the Register's Court on appeal.

That many acts of the register are judicial, will be apparent to any one who will study his duties under our law. In the performance of many of these he is a judge, from whose decision an appeal lies to the Register's Court: Loy *v.* Kennedy, 1 W. & S. 396. In the 28th section of the Act of 15th March 1832, the register is expressly given power and jurisdiction to revoke letters granted in the cases therein mentioned. We think the register did not transcend his power in this case; certainly the Register's Court did not, and the decree is

Affirmed at the costs of the appellant.