## Kenyon *versus* Stewart.

*Judgment of Register on Probate, presumptive Evidence of Validity of Will.—Power of the Legislature to modify Legal Remedies.—Retroactive Legislation.*

1. The judgment of a register of wills in admitting a will to probate is presumptive evidence of its validity as to lands thereby devised, and the presumption stands, until overthrown by proof of illegal execution, or that the testator was insane, under duress, or undue influence.
2. Hence in an ejectment for lands devised to one by will, but claimed by another, as the heir at law, the exemplification of the will is admissible as *primâ facie* evidence of title in the devisee.
3. The power of the legislature to modify legal remedies is the same

[Kenyon *v.* Stewart.]

whether applied to past or future cases, but it is to be exercised with a sound discretion, and a due regard to the rights of private property.

4. The 7th section of Act 22d April 1856, declaring that an uncontested probate by the register of the proper county, of any will devising real estate, shall be conclusive after five years from its date, applies to a will proved before its passage, and is not unconstitutional because retroactive.

CERTIFICATE from the Court at *Nisi Prius.*

This was an action of ejectment brought by Emma M. Kenyon against Mary Stewart, to recover possession of premises No. 209 North Tenth street, in the city of Philadelphia. Both parties claim title under the late Captain Henry Kenyon, who died some time between the 12th of August and the 17th of October, A. D. 1833. The defendant claimed as a purchaser at an Orphans' Court sale, under a will dated August 7th 1833, and codicil dated August 12th 1833, alleged to have been made by Captain Kenyon at the times of their respective dates. On the 17th day of October 1833, these papers were admitted to probate.

Abraham L. Pennock and Samuel Sellers, who were named as executors therein, renounced and declined to act immediately after Captain Kenyon's decease, and letters of administration *c. t. a.* were granted to the Rev. William T. Brantley. Mrs. Mary Ashbridge, the principal beneficiary named in the will, at once took possession of the real estate, and collected the rents of the same down to the time when the defendant purchased the property in dispute, and came into possession thereof. The Rev. Mr. Brantley died in the year 1835, and on the 30th August 1835, letters of administration *d. b. n. c. t. a.* of H. Kenyon, were granted to Joseph H. Ashbridge. On the 5th day of January 1855, J. H. Ashbridge presented his petition to the Orphans' Court of Philadelphia county, setting forth that Captain Kenyon, having first made the will and codicil aforesaid, died seised of the premises which are in dispute in this case, and also of certain premises in Pine street between Sixth and Seventh streets (which were the subject of dispute in an action of ejectment then pending between the present plaintiff and Mrs. Mary Ashbridge, in the Supreme Court of July Term 1854, No. 102), and praying for an inquest of partition among the devisees named in the aforesaid will and codicil. A jury of inquest duly appointed reported that the same could not be divided without prejudice to or spoiling the whole ; and assessed the premises in dispute in this case, being No. 1, at $2000, and the premises in Pine street, No. 2, at $6000. The court thereupon granted a rule on all the parties interested to accept or refuse the same at the valuation named. Service of this rule was accepted, March 30th 1855, by Mrs. Mary Ashbridge and the other devisees named in the said will and codicil, all of whom refused

to take the estate of Henry Kenyon, deceased, or any part thereof, at the valuation, and agreed that an order of sale of said premises, No. 1 and No. 2, should be made forthwith, and without further notice.  On the 6th of April following, the court made an order for the sale of the said estate by the administrator ; in pursuance thereof, the premises in dispute were sold to the defendant, on the 9th day of May, A. D. 1855, for the sum of $2000, and $50 of the purchase-money was paid at the sale.  On the 18th day of May following, the sale was confirmed by the court.  The balance of the purchase-money was not paid until about the 16th day of February, A. D. 1856.

The plaintiff, who was the only known child of Captain Kenyon, and who came of age in 1842, asserted that the alleged will and codicil of August 7th and 12th 1833, was not the will of Captain Kenyon ; that he was not *compos mentis* at the time the said will and codicil were alleged to have been made ; and that it was procured by fraud practised on him and on the plaintiff, by Mary Ashbridge ; and therefore claimed the property by a double title : 1st. As devisee under a will made by Captain Kenyon some time prior to his last sickness and death, which she alleged Mary Ashbridge had destroyed or suppressed ; and 2d. As the daughter of Captain Kenyon, and only heir at law of his estate.

In the year 1848 the present plaintiff commenced an action of ejectment against Mary Ashbridge, to recover possession of the premises in Pine street.  On the 31st of January 1850, the depositions of Elizabeth Chase and Theresa Kern were taken, and on the 30th of September following, Mrs. Mary Jennings's deposition was taken.  This last, with the two former depositions, were filed in the cause on the 21st of December in the same year.  The same day, under defendant's rule to declare in eight days or *non pros.*, the *narr.* was filed.

The case was then referred to arbitrators, under a compulsory rule, who, on the evidence submitted to them, on the 11th of June, A. D. 1851, filed their award in favour of the defendant. From this award no appeal was taken, but in August 1854 the plaintiff brought a second action for the Pine street property, in the Supreme Court to July Term 1854, No. 102.  This is the action that was pending when the present defendant purchased the property in Tenth street.  The lot at that time, and for several years, had been vacant.  A short time after the sale had taken place, the plaintiff heard of it, and went to the defendant and informed her of her claim to the property.  She also wrote her a notice of the proceedings in ejectment, and notified her not to pay the purchase-money.  In consequence of this notice, a motion was made in the Orphans' Court to set aside the sale, but from the docket entries filed therein, it does

[Kenyon *v.* Stewart.]

not appear that anything further was done in the premises. The petition or affidavit to set aside the sale was not produced, and could not be found in the Orphans' Court office.

Before the purchase-money was paid, however, a refunding or indemnity bond was given by John R. James to the defendant.

On the trial, the plaintiff's counsel proposed to present their whole case to the jury as evidence in chief. After showing how the defendant derived title under Mrs. Mary Ashbridge, the principal devisee under the will and codicil proven October 17th 1833, the deposition of Mary Jennings, which was proven to have been taken and filed in the case of Kenyon, the present plaintiff, *v.* Mrs. Mary Ashbridge, in this court, of July Term 1848, No. 100, and to have been read on the trials of the case between the same parties, in this court, of July Term 1854, No. 102, was first offered generally. This was objected to, and the court sustained the objection in the following words: " This deposition is not between the same parties nor privies either in estate or in blood, and we cannot admit the testimony."

Afterwards it was shown that the defendant, before she consummated the purchase of the property, was duly notified of the plaintiff's claim, and had taken the refunding or indemnity bond for her protection against loss. Under these circumstances, the depositions of Mrs. Mary Jennings, Elizabeth Chase, and Theresa Kern, which were all taken and filed in the case of Kenyon *v.* Ashbridge, July Term 1848, No. 100, and the notes of counsel of the testimony of Hannah M. Barber, deceased, a witness on the trial of said case before arbitrators, were then offered in evidence, and overruled by the court.

A portion of the deposition of Mrs. Atkinson, taken and filed in the case of Kenyon *v.* Ashbridge, of July Term 1854, No. 102, relating to the existence of a prior will made by Captain Kenyon in favour of the plaintiff, was also excluded by the court.

The effect of these rulings was to confine the evidence in chief to the proof that the plaintiff is the heir at law of Captain Kenyon. On this point several witnesses were examined. Part of the deposition of Mrs. Atkinson was also read for the same object. In addition to this, the verdict of the jury in the case of Kenyon *v.* Ashbridge, of July Term 1854, No. 102, was also offered, but overruled by the court. The plaintiff here rested her case.

The defendant's counsel did not produce the original will and codicil under which she claimed, but offered instead an exemplification thereof by the present register of wills of Philadelphia county, in which was also included the probate thereof made before J. Hawes, register of wills at that time. This offer was objected to, because the validity of these papers was the principal

subject-matter of dispute in this action; and to assist in the determination of this vital question, it was necessary that the originals should be produced before, and examined by, the jury; that in this issue the originals were the best evidence: they could, and therefore ought to, have been brought into court. The objection, however, was overruled by the court.

The defendant next offered in evidence a certificate of the present register of wills of Philadelphia county, that "no *caveat*" had been filed in the case of the will and codicil of Henry Kenyon, deceased, dated respectively August 7th and August 12th 1833.

This was objected to as irrelevant, but the certificate was admitted by the court as evidence, under the 7th section of the Act of Assembly approved April 22d 1856. The section referred to is in the following words:—

"Section 7. That the probate by the register of the proper county, of any will devising real estate, shall be conclusive as to such realty, unless, within five years from the date of such probate, those interested to controvert it shall, by *caveat* and action at law duly pursued, contest the validity of such will as to such realty: *Provided*, that all persons who would be sooner barred by this section taking immediate effect, shall not be thereby barred before two years from the date hereof."

The defendant then gave in evidence an exemplification of the proceedings in the Orphans' Court, and also an exemplification by the present register of wills of the administration-bond of Joseph H. Ashbridge, and the proceedings in relation thereto. These papers showed that Mrs. Mary Ashbridge held a life interest in the whole estate of Henry Kenyon, under the will and codicil of August 1833. 2d. That upon the renunciation of the executors named therein, she was entitled by law to the administration. 3d. That she renounced in favour of Joseph H. Ashbridge. 4th. That by the will and codicil she had a right to take absolutely the whole of the estate or any part of it at a fair valuation. 5th. That she refused to do so, and by virtue thereof the sale of the whole estate was ordered, under which the defendant purchased the property now in dispute.

The defendant also set up an adverse possession of twenty-one years and upwards, by proving that Mrs. Ashbridge collected the rents of the property from 1835 to the year 1851, when, or shortly afterwards, it was burnt down; and that she had continually paid the taxes from 1837 to the time the defendant purchased. The property was assessed in the name of Kenyon until 1846, and then changed to Mary Ashbridge, in whose name it continued until 1857; it was then changed to the name of the defendant. This, with some testimony which was given for the purpose of controverting the testimony of the plaintiff

as to the marriage of Captain Kenyon, concluded the defendant's case.

The plaintiff in rebuttal called Abraham L. Pennock, and proposed to prove by him and other witnesses, that the will and codicil set up by defendant were procured by fraud, and that Captain Kenyon, at the time of their alleged execution, was incompetent to make a will. This was objected to by defendant's counsel, on the ground that by the 7th section of the Act of Assembly, approved April 22d 1856, entitled " An Act· for the greater certainty of title and more secure enjoyments of real estate," the probate of this will by the register of Philadelphia county at this time, is conclusive as to the defendant's title to the property in dispute. The court sustained the objection, and overruled all the testimony offered on this point.

In this connection the depositions of Mrs. Jennings and others, and the notes of the testimony of Hannah M. Barber, deceased, were again offered in evidence, but objected to because not between the same parties, and again overruled by the court.

The record of the ejectment between the present plaintiff and Mary Ashbridge, in this court of July Term 1854, No. 102, was then again offered in evidence to show that at the time the Act of 22d of April 1856 referred to was passed, an action at law was pending, in which was involved the question of the validity of the will and codicil set up by defendant, that it was duly pursued and finally determined, and that in that action the said will and codicil were determined to be invalid. The objections to this offer were that the suit was not between the same parties and about other property, and because it would be in contravention of the previous ruling. This testimony was also excluded on the Act of Assembly above referred to.

The plaintiff having no further testimony to offer, the case was submitted to the jury, without argument by counsel. The learned judge then charged the jury that they should find a verdict for the defendant upon the evidence of a will and codicil made. by Captain Kenyon, and proved October 17th 1833, and the title shown thereunder. This was excepted to by the plaintiff.

There was a verdict and judgment accordingly; whereupon the plaintiff requested the learned judge to certify the case to the court in banc, averring,

1. That the court erred in not admitting in evidence the deposition of Mary Jennings, taken and filed in the case of Kenyon *v.* Ashbridge, in this court, of July Term 1848, No. 100, and read on the trial of the case of Kenyon *v.* Ashbridge, of July Term 1854, No. 102, and offered by the counsel for the plaintiff, as stated in the first bill of exceptions, which deposition was excluded for reasons stated by the court as follows :—" This

deposition is not between the same parties or privies, either in estate or in blood, and we cannot admit the testimony."

2. In not admitting in evidence the record of the case of Kenyon v. Ashbridge, in this court, of July Term 1854, No. 102, with the verdict therein, which was offered by the plaintiff to show that it established the heirship of the plaintiff as the daughter of Captain Henry Kenyon, deceased, as stated in the second bill of exceptions.

3. In refusing to admit in evidence the depositions of Mary Jennings, Theresa Kern, Elizabeth Chase, and the notes of the testimony of Hannah M. Barber, witnesses in the case of Kenyon v. Ashbridge, in this court, of July Term 1848, No. 100, who are now deceased, or out of the jurisdiction of the court, which were offered by the counsel for the plaintiff, after it was proven to the court and jury,—1. That the said depositions were taken and filed in this court, in said cause, long before the defendant came into possession of the premises in dispute.  2. That at the time the defendant purchased the property, the case of Kenyon v. Ashbridge, in this court, of July Term 1854, No. 102, in which the title to another part of the estate of Henry Kenyon was in dispute, was then pending and undetermined.  3. That the subject-matters in controversy in said suit were identically the same as those in this suit, viz., the validity of the alleged will of August 7th 1833, and codicil of August 12th 1833, of Henry Kenyon, deceased, the legitimacy of the plaintiff, and the existence of a will, made by Captain Kenyon in favour of the present plaintiff.  4. That the present defendant came into possession of the premises in dispute under the defendant in the case of Kenyon v. Ashbridge.  5. That the defendant had full notice of the plaintiff's claim to the whole estate of Henry Kenyon, deceased, and that the validity of the alleged will and codicil under which she (defendant) now claims, was the main point in dispute in the case then pending, before the sale to her was consummated, and before she had paid more than $50 of the purchase-money.  6. That defendant had required and taken a refunding or indemnity bond against loss.

4. In refusing to admit in evidence the passages in the deposition of Sarah Ann Atkinson, contained in the eighth bill of exceptions, as follows: " Captain Kenyon told me he had made his will, and willed all to his daughter Matilda.  That is this daughter.  Her name is Emma Matilda Kenyon.  I heard him say this about three years before his death.  I met him one day in Schuylkill Eighth street, with his daughter, when he told me what I have told you."

" I heard him say he had made his will and left his property to her."

5. In admitting as evidence to the jury on the trial, the

[Kenyon *v.* Stewart.]

exemplification by the register of wills of Philadelphia county, of the alleged will and codicil of Henry Kenyon, dated 7th and 12th August 1833, and proved October 17th 1833, inasmuch as the validity of said alleged will and codicil was the primary and therefore the principal subject of dispute in this action, and the defendant had it within her power to cause the original papers referred to, which were in the register's office of this county, to be produced.

6. In admitting in evidence for the defendant, with the exemplification of the register of wills of Philadelphia county, of the said alleged will and codicil of Henry Kenyon, deceased, a certain other paper included in said exemplification, which purported to be a copy of a certain alleged probate of the said alleged will and codicil, which evidence was contained and included in the fourth bill of exceptions.

7. In admitting as evidence " the certificate of the register of wills that no caveat has been filed in the case of the alleged will and codicil, under which the defendant claims the premises in dispute," which evidence was objected to by the counsel for the plaintiff as irrelevant to the subject-matters in dispute in this action, but admitted for the reason stated by the court, as follows : " This is evidence under the Act of Assembly of 1856."

8. In admitting as evidence the exemplification from the Orphans' Court of the proceedings in the Orphans' Court in partition of the estate of Henry Kenyon, deceased, including the property in dispute, whereas the record itself might have been produced.

9. In admitting as evidence the exemplification from the register of wills of Philadelphia county, of the letters of administration *cum testamentum annexo* (*i. e.* the alleged will and codicil of August 7th and August 12th 1833 respectively) of Henry Kenyon, deceased, to Joseph H. Ashbridge, inasmuch as the original letters of administration *d. b. n. c. t. a.* ought to have been produced.

10. In refusing to admit in evidence the testimony of Abraham L. Pennock, and other witnesses offered by the plaintiff for the purpose of proving that Captain Kenyon, at the date of the alleged will and codicil under which defendant claimed, was incompetent to make one ; that the said alleged will and codicil was procured to be made by fraud and undue influence practised by Mary Ashbridge, under whom the defendant came into possession, or by her procurement, as set forth in the ninth bill of exceptions.

11. In not admitting in evidence the record of the action of ejectment between Emma M. Kenyon and Mary Ashbridge, in this court, of July Term 1854, No. 102, which was offered by the

[Kenyon v. Stewart.]

plaintiff's counsel for the purpose of showing that the said alleged will and codicil, under which the defendant claims, was in dispute in that cause, and that its validity had been contested by action at law, duly pursued by the plaintiff within the time prescribed by the 7th section of the Act of Assembly, approved April 22d 1856, entitled "An Act for the greater certainty of title and more secure enjoyment of real estate," and that said alleged will and codicil was in and by said action duly and finally determined to be invalid, as stated in the tenth bill of exceptions.

12. In not admitting in evidence the depositions of Mary Jennings, Elizabeth Chase, Theresa Kern, and the notes of the testimony of Hannah M. Barber, deceased, taken in the case of E. M. Kenyon v. Mary Ashbridge, in this court, of July Term 1848, No. 100, it being admitted that the witnesses were dead, or out of the jurisdiction of the court, which were offered by the counsel for the plaintiff, but objected to because not between the same parties, as stated in the eleventh bill of exceptions ; and

13. In charging the jury that they should find a verdict for the defendant, upon the evidence of the said will and codicil alleged to have been made by Captain Kenyon, and proved October 17th 1833, and the title shown by the defendant thereunder, as stated in the twelfth bill of exceptions.

This case was argued at length in this court by *D. P. Brown* and *A. M. Burton* for plaintiff in error; and by *D. Dougherty* and *G. M. Wharton* for defendant in error.

The main questions in the cause were as to the admissibility, of the exemplification of the alleged will of Captain Kenyon, as evidence for defendant, and the application of the 7th section of the Act of April 22d 1856, relative to the probate of wills, to the will under which the defendant claimed.

The opinion of the court was delivered, February 2d 1863, by WOODWARD, J.—There are two questions on this record which, if decided against the plaintiff in error, will be decisive of the cause, and will relieve us of all necessity to notice the numerous points suggested in thirteen assignments of error.

The first of these questions is whether the learned judge erred in admitting in evidence on the part of the defendant an exemplification of the Kenyon will. The will was dated the 7th or 12th August 1833, was proved October 17th 1833, and was duly recorded. The defendant claimed title to the premises in dispute through and by virtue of a devise contained in the will. The 17th section of the Act of 15th March 1832, Purd. 188, says, that all copies of probates of wills proved under the act,

[Kenyon *v.* Stewart.]

and attested by the seal of the proper office, shall be good evidence to prove the gift or devise thereby made. This provision is copied from the Act of 1705, 1 Smith's Laws 33, under·which it was decided in Logan *v.* Watt, 5 S. & R. 212, that the certificate of the register of wills that a will of lands had been duly proved and approved before him, with a copy thereof annexed, was *primâ facie* evidence of such will, though a copy of the probate was not set out. In Loy *v.* Kennedy, 1 W. & S. 399, a certified copy of a will defectively proved, was held to be *primâ facie* evidence of title under the Act of 1832. In Holliday *v.* Ward, 7 Harris 485, the original will was offered in evidence, in connection with what seemed to be a defective probate of it, and this court said in support of the admission of the evidence by the court below, that the validity of a will is a fact which the court infers from the decision itself of the register, and not from the evidence on which the decision was based. A judge before whom the will comes, collaterally proved and approved by the proper authority, has no right to reject it because it may seem to him that the probate was allowed on the testimony of an incompetent witness, or on proof that was insufficient. These cases go upon the principle that the register is a judge, and the admission of a will to probate is a judicial decision. His judgment, if it be in favour of the will, is evidence of its validity, in all respects conclusive as to personal property, and presumptive as to real. But only presumptive as to realty; and this presumption may be rebutted by showing, in ejectment, that it was not legally executed, or that the testator was insane, or under duress, or influenced by the fraudulent practices of an interested party. The burthen of proof is upon the party assailing the will, and, as in all other cases of *primâ facie* evidence, it stands until overthrown by direct assault. Counsel seem to suppose that there was something in the character of the issue which made it the duty of the defendant to produce the original will. The action was ejectment, wherein the plaintiff claimed by descent-cast from her father; the defendant claimed under his devisee. Will or no will was, indeed, the issue; but the probate of the register furnished *primâ facie* proof in favour of the defendant, and it was the duty of the plaintiff to overcome it if she expected to recover. If for any of the purposes of the trial she wanted inspection to be had of the original paper, she should have given defendant notice to produce it, or have served a *subpœna duces tecum* on the register, and, failing in this, her objection to the admission of the exemplification was properly overruled. Counsel have referred us to several authorities on this head, of which only one seems to be pertinent—that is section 693 of 2 Greenleaf's Evidence. It is there said that, in those states in which the probate of the will is not regarded

[Kenyon v. Stewart.]

as conclusive in respect to lands, it is necessary in the first place to produce the original will, or to prove its former existence and subsequent loss, in order to let in the secondary evidence of its contents. This is not an accurate statement of the law of Pennsylvania, for though a probate in this state is not conclusive as to lands, it is nevertheless admissible as *primâ facie* evidence, as is shown by the cases above cited. Mr. Greenleaf cites no Pennsylvania authority to sustain his text, and he probably did not mean to be understood as stating the rule of evidence as it obtains in this state.

The other question to which I alluded in the beginning of the opinion, arises under the 7th section of the Act of Assembly of 22d of April 1856, Purd. 1169, which is in these words : " That the probate by the register of the proper county, of any will devising real estate, shall be conclusive as to such realty, unless within five years from the date of such probate those interested to controvert it shall, by *caveat* and action at law duly pursued, contest the validity of such will as to such realty ; provided, that all persons who would be sooner barred by this section taking immediate effect, shall not be thereby barred before two years from the date hereof."

The main purpose of this section was to give to the probate of wills, after five years, the same conclusive effect as to real estate which it has always possessed in England and here in respect to personal goods. Though held to be *primâ facie* evidence of title, the probate with us has been open to contest indefinitely, or at least for any time short of the period at which the common law would set up a conclusive presumption in its favour. This was the mischief the statute meant to remedy. Innumerable titles throughout the commonwealth depended, and always will depend, on the probate of wills. That probate, the foundation of so many titles, we treat as a judicial decree, and the legislature thought there ought to be a time when it should be no longer questionable. The act of which this section is a part was planned to assure the people of greater certainty of title, and to make them more secure in the enjoyment of real estate. It is founded in highest considerations of public policy. It is a statute of peace, security, and repose. It is entitled, therefore, to a liberal construction from the courts. Does it apply to the probate of Captain Kenyon's will ? This is the immediate question before us.

It plainly declares that the uncontested probate shall be conclusive after five years from its date. It specifies a *caveat* and an action at law as the means of contest. This word *caveat* is inaccurately used here. *Caveat*, let him beware, is a notice given by a party having an interest, to some officer not to do an act till the party giving the notice has a chance to be heard, as

[Kenyon *v.* Stewart.]

to the register of wills not to permit a will to be proved, or not to grant letters of administration, or to the officers of the land office not to give a patent, or to a clerk in chancery not to enroll a decree until the objections can be heard. It always precedes the act, and is never heard of as a means of undoing what has been already done. But the other words, "action at law," are sensible, and mean an ejectment, as in this case, or any proceeding where the issue is *devisavit vel non.* It is earnestly contended that the section is prospective, and should be so construed as to affect only wills admitted to probate after the enactment went into force. Our disposition always is to give statutes prospective operation only, and we have said many times that we would not give them retroactive effect except under pressure of the most unambiguous language. If the enacting clause stood alone, I think it would be a fair case for the application of this rule of construction. I should see nothing in it necessarily applicable to a probate long passed, when the section was enacted. But there is a proviso which must be taken in connection with the enacting clause, and which would be insensible if the section is not to have substantially a retroactive effect. The persons who would be barred in less than five years by this section taking immediate effect, would be those who were interested in probates theretofore granted. Unless the legislature intended the enacting clause to operate on existing probates, the proviso need not have been added. But if they did so intend, then it was no matter when the existing probate was made, whether one or ten years before—the longer before the more reason, indeed, for applying the limitation. We must say, in view of the proviso, that the legislature meant to furnish a rule not only for future probates, but for past ones also. For those that were future, the limitation was five years from the date of the probate; for those that were past and would be sooner barred, two years from the date of the act. And by the date of the act we are to understand the 1st of October 1856, when the act, by its own limitation, was to take effect. The construction of the entire section may therefore be expressed thus: All probates of wills, whether past or future, shall be subject to the limitation of five years from the date of granting them; but as that period must necessarily be wholly or partly run out in respect to past probates, parties interested in them shall have two years from the time this act takes effect to institute their action at law. This construction would operate unequally, I agree, for whilst it would add two years to the twenty odd years that had passed at the date of the law, since the probate of Captain Kenyon's will, it would add but two to the one year that may have elapsed since probate of another man's will, giving to those interested in the latter only three years in all. But of this the present plaintiff

[Kenyon *v.* Stewart.]

in error has no reason to complain. The only parties whom the construction pinches are those who were interested in contesting wills proved less than three years before the date of the law, and we are not informed that any such parties exist.

According to this construction Miss Kenyon had two years from the 1st of October 1856 in which to sue, but her action was not brought until 31st March 1860. She slipped her time. I think it of some consequence to state that she was of full age and unmarried when the act was passed, for, otherwise, an embarrassing question might arise under the first section of the act, such as was discussed in Miller *v.* Franciscus, 4 Wright 339. As she was *sui juris* at the date of the law, and subject to the limitation prescribed, the only remaining point to be considered is whether the statute is constitutional.

It is not unconstitutional because it is retroactive; for the cases cited in the argument show that retroactive legislation has often been sustained; the most remarkable instance of which in our own books is Satterlee *v.* Matthewson, 16 S. & R. 169.

But it is argued that on the death of her father the intestate law vested in her the right to sue for and recover possession of his real estate, and that it was not competent for the legislature to restrict and impair this vested right.

Limitations of actions, either by prescription or by statute, are older than any of our constitutions or common law. Mr. Angell, in his work on Limitations, p. 8, finds traces of them in the Levitical law, and express recognitions of them in the codes of ancient Greece and Rome; whilst among the modern nations of continental Europe, some term of time has invariably been observed as the *ne plus ultra* beyond which a possession shall not be disturbed, and at the end of which a party shall in all cases be completely exonerated from all judicial interpellation. Founding ourselves on these immemorial precedents, and on the salutary maxim of our own common law, *interest republicæ ut sit finis litium,* we have provided statutes of limitation that affect all our most vital rights. Lands, chattels, debts, personal rights and injuries, everything, indeed, to which the law extends a remedy, it attaches also a limitation. It is the nature of statutes of limitation to bar the remedies of the law; but civil rights that have lost their legal remedies exist only in name. Doubtless every civilized community is bound to furnish to its members adequate remedies for wrongs, and adequate securities for rights, but it is not unreasonable for the community to insist that its remedies or securities shall be sought with diligence—within a reasonable and prefixed period—whilst witnesses and papers are likely to survive. It is a great public evil that estates should be for ever in jeopardy, and that no end should be put to stale controversies. Statutes of limitation, therefore, are well

[Kenyon *v.* Stewart.]

called statutes of repose. If the legislature should pass an act by which a right of action, then existing, should be barred without any allowance of time for the institution of the action in future, it would be difficult to reconcile such an act with the express constitutional provisions in favour of the rights of private property. But where a future action is expressly given, as it is in this case, we are bound to recognise the principle stated by Judge Baldwin, in Jackson *v.* Lamphire, 3 Pet. 280, that the time and manner of the operation of such statutes, the exceptions to them, and the acts from which the time limited shall begin to run, will depend on the sound discretion of the legislature according to the nature of the titles, the situation of the country, and the emergency which leads to their. enactment. That learned judge put by way of illustration the undoubted power of state legislatures to pass recording acts, by which the elder grantee shall be postponed to a younger, if the prior deed is not recorded within a limited time, and he added, "*the power is the same whether the deed is dated before or after the passage of the recording act.*"

Here, we take it, is the principle that decides the question before us. The power of the legislature to modify legal remedies is the same whether applied to past or future cases, but it is to be exercised with a sound discretion and a due regard to the rights of private property. Where it is so exercised no constitutional doubt can arise. If, on the other hand, we saw an exercise of the power in wanton disregard of private rights, it would be our duty to interpose the judicial shield.

In the case before us we recognise a clear legislative power exercised according to a sound legislative discretion. It cannot be doubted that it is as much the right of the legislature to restrict and limit legal remedies as it is their duty to furnish them. And when they give contestants of a will five years from the date of its probate to institute proceedings, no man can say it is an exercise of power without a due regard to the rights of parties. Especially cannot this plaintiff say so, when to the twenty-three years that she slumbered on her rights, the legislature added two years more of grace, with the strongest possible admonition to her to be up and doing.

We conclude, therefore, that the probate of the will was conclusive against the plaintiff, and this ends the cause.

The judgment is affirmed.