From S. M. Williamson, Waynesburg, Pa.

---

## Phillips's Estate. No. 2.

*Executors and administrators—Revocation of letters of administration—Jurisdiction of register of wills—Caveat—Act of June 7, 1917.*

1. Where a *caveat* is filed by a younger son against the granting of letters of administration to the oldest son of a decedent, the *caveat*, under the Act of June 7, 1917, P. L. 415, operates as a stay against the oldest son for ten full days after it is filed.

2. The *caveat* arrests the proceedings until the truth of the facts alleged can be determined, and it enures to the benefit of all parties interested in the subject.

3. Until the ten days have expired, it is improper and illegal to issue letters to the younger son without giving the oldest son a chance to be heard.

4. If such letters have been issued, it was an improvident action, and the register of wills has jurisdiction to revoke them.

5. The register of wills is not restricted in his power to revoke letters of administration to the cases of where letters have been issued to one not next of kin and where a will has been discovered and probated, as provided by the Act of June 7, 1917, P. L. 415.

6. While the maxim *"expressio unius est exclusio alterius"* may be applied to such a statute as the Act of 1917, it should be applied only as a means of discovering the legislative intent and should never be permitted to defeat the plainly-indicated purpose of the legislature.

7. The prior law and the decisions of the courts indicate that the Act of 1917 was not intended to restrict the register's power to revoke merely to the cases mentioned in the act.

8. An application to revoke letters of administration should be made to the register of wills.

9. If the register finds that he has improvidently issued the letters, he has jurisdiction to revoke them.

10. Where the register, on an application to revoke letters, is presented with a paper on the construction of which he is doubtful, he has power to certify the entire record to the Orphans' Court as a disputable and difficult matter for its determination.

*Partition—Assignment of expectancy—Release of claim—Evidence—Witnesses—Declarations—Act of May 23, 1887.*

11. Where a writing delivered by a son to his mother is alleged to be an assignment of his expectancy in her estate, but is claimed by him to be merely a release to her of what she owed him, and the paper itself is ambiguous on its face, the testimony of witnesses and the declarations of the mother herself are admissible in evidence in partition proceedings after the mother's death to show that it was the understanding of both parties that the paper was a mere release to the mother of what she owed him, and not an assignment of his interest in her estate if she died intestate.

12. In such case, the son was a competent witness, inasmuch as he was not a surviving party to the thing or contract in action within the prohibition of clause (e) of section 5 of the Act of May 23, 1887, P. L. 158.

13. The declarations of the decedent were also admissible, inasmuch as the rule excluding hearsay evidence does not apply to oral or written declarations of deceased persons made against their interest.

14. The assignment of an expectancy in an estate of a living person may be enforced as an executory agreement to convey, but such assignment must be sustained by a valuable and not merely a good consideration.

15. The consideration of the sum of $1 is insufficient, and especially is this so where the enforcement of the assignment would violate the presumption in favor of the rule of equality among children.

Appeal from an order of Register of Wills revoking letters of administration to George W. Phillips. O. C. Greene Co., June T., 1926, No. 34.

*Scott & Hook*, for Curl H. Phillips;

*Montgomery & Waychoff*, for George W. Phillips.

SAYERS, P. J., Oct. 31, 1927.—This is an appeal by George W. Phillips from the decree of the register of wills revoking letters of administration.

### Facts.

Isabella Phillips died intestate Dec. 28, 1925, leaving to survive her two sons, Curl H. Phillips and George W. Phillips, who were all her heirs-at-law. She died seized of a house and lot in the Borough of Carmichaels, fronting 100 feet on Market Street and extending back along Greene Street 150 feet, worth about $3000, and had money to the amount of $9685.08 and household goods worth $244.45. It was supposed by her heirs and associates that she had about $3000 in money and household goods when she died, and the additional money items, increasing said amount to $9685.08, were discovered when her estate was appraised and after letters were originally granted to George W. Phillips.

At the time of decedent's death, George W. Phillips was fifty-five years of age and Curl H. Phillips was fifty-seven years old. They were sons of the decedent and John W. Phillips, her husband, who died in 1901 and who devised

the house and lot of which decedent died seized to her, and it appears that he did not bequeath anything to his two sons above named, except to each the sum of $1.

Shortly after his mother's death, Curl H. Phillips, the older son, came to Waynesburg to take out letters on her estate and went to the register of wills' office and found that George W. Phillips had, on Jan. 4, 1926, lodged a *caveat* against the granting of letters to him, the said Curl H. Phillips, or any other person, until his right thereto be tried and determined by the proper tribunal, in due form, according to law.

Seven days after George W. Phillips had filed his *caveat*, to wit, on Jan. 11, 1926, he and his attorney, L. W. Sayers, appeared before the deputy register, Arleigh L. Varner, and filed a petition and requested that letters be granted to George W. Phillips, and it was there represented, or had been prior thereto represented, that Curl H. Phillips was a drunkard and unfit to administer his mother's estate and had no interest in her estate by reason of a certain paper, called a release or assignment, which he had executed and delivered to his mother on Oct. 26, 1907, a copy of which is as follows:

Exhibit "A."

"Carmichaels, Pa., Oct. 26, 1907.

"For and in consideration of the sum of one dollar to me in hand paid, the receipt of which I hereby acknowledge, I hereby release any and all claims that I now have or hereafter may have to any real estate or personal property that now belongs to Isabelle Phillips.

"I also agree not to molest or disturb said Isabelle Phillips at any future time or any place.

"Witness my hand and seal.

"(Signed)   CURL H. PHILLIPS  [Seal].

"In presence of:
·   "HENRY HEWITT.
"J. L. REA."

The register on the above state of facts granted letters to George W. Phillips on Jan. 11, 1926, and he filed his bond as required in the sum of $6000. After the inventory was filed on Jan. 19, 1926, showing personal estate of $9929.53, and after Curl H. Phillips filed an application and petition on Jan. 21, 1926, praying that the letters of administration granted to George W. Phillips be revoked and letters of administration granted the petitioner, George W. Phillips filed, Feb. 3, 1926, an additional bond in the sum of $14,000, and on the same day filed an answer to the petition to revoke his letters and prayed that the petition of Curl H. Phillips be dismissed, and also filed a supplemental answer on Feb. 18, 1926, and an additional or reapplication for letters of administration, praying that the citation to show cause why his letters should not be revoked be dismissed. The citation to show cause why the letters granted to George W. Phillips should not be revoked was returnable Feb. 18, 1926, and while the record of the case in the exemplification filed does not show the date of the hearing before the register, a hearing seems to have been had on the petition to revoke and answers filed. The record of the register fails, also, to note the filing of the appeal or the appeal bond.

The register, on March 8, 1926, filed an opinion and order revoking the letters of administration granted to George W. Phillips, and on March 11, 1926, the said George W. Phillips appealed to this court and filed his bond on appeal in the sum of $500, and thereupon the register certified the record

before him unto this court. The record was filed in this court as required by the citation directed to the register, but the clerk of this court neglected to mark thereon the date upon which said record was filed.

The register filed with his decree revoking the letters granted to George W. Phillips the following opinion:

*Order.*

"After due and careful hearing on the above case, I consider it wise to revoke the letters granted to George W. Phillips, administrator in the estate of Isabella Phillips, deceased, dated Jan. 11, 1926, for the following reasons:

"1. That, at the time letters of administration were granted to George W. Phillips, there was presented to me a paper, signed by Curl H. Phillips, and representations made to me that Curl H. Phillips did not have an interest in said estate and that he had renounced his right to administer, all of which representations have been denied by the said Curl H. Phillips. That, at the time said paper was presented to me, I had no authority to determine the effect of same.

"2. That Curl H. Phillips was the oldest son of Isabelle Phillips, deceased, and resided at Carmichaels, Greene County, Pennsylvania, and was entitled to letters of administration on her estate, in preference to George W. Phillips, all other things being equal, and for that reason the said Curl H. Phillips was entitled to be heard before letters of administration were granted to any person.

"3. That, in granting letters to George W. Phillips, I did not decide, as between he and Curl H. Phillips, as to who would be the proper person to administer on said estate.

"4. By revoking said letters, George W. Phillips and Curl H. Phillips are both placed in the same situation they were prior to the time letters were granted to said George W. Phillips, and both can be given a fair hearing in order that I might decide who is the proper person to whom letters should be granted.

"5. In fairness to Curl H. Phillips, George W. Phillips and myself, the letters of administration granted to George W. Phillips should be revoked in order that I might correct an honorable misunderstanding in the granting of the same.

"6. The register has original jurisdiction to revoke letters of administration wrongfully and improvidently granted by him, as was done in this case: Sharpless's Estate, 28 Dist. R. 746; Wehry's Estate, 47 Pa. C. C. Reps. 486.

"And now, March 8, 1926, I hereby revoke the above letters for the above-stated reasons.

"J. BRYAN VARNER,
"Register of Wills.     [Seal]"

After the appeal was filed, a date for hearing the matter was fixed and the testimony filed herewith was taken in open court.

In addition to the above facts, this court finds that, after having lodged a *caveat* warning the register not to grant letters to Curl H. Phillips, or any other person, George W. Phillips appeared within seven days thereafter, and he and his counsel represented to the register that Curl H. Phillips was a drunkard and unfit to administer his mother's estate and filed a paper which he claimed Curl H. Phillips had executed, a copy of which is hereinbefore set forth, whereby it was claimed he had released all interest he had in decedent's estate, including his right to administer thereon, and the register, without notice to Curl H. Phillips, who was the elder son of decedent, found the facts

to be as claimed by George W. Phillips, the appellant, and granted the letters to him as prayed for in his application, without a hearing or notice of any kind to Curl H. Phillips.

The register also found that it had been the custom and practice of the register, if there were no other objections to such appointment made known to him, to name the eldest son or daughter of the class entitled to letters, and that he would have observed the same rule in this case, in the exercise of his discretion, and if, upon a proper hearing and consideration of the claims of both parties, he had ascertained that the objections to the granting of letters to the said Curl H. Phillips were without foundation, he would have issued the letters to him. The register, after considering the petition of Curl H. Phillips to revoke. the letters granted to George W. Phillips, concluded that he had improvidently and without due consideration granted letters in the first instance to the said George W. Phillips, and for that reason he has revoked his said appointment. The register was also of the opinion that he had no authority to determine the effect of the alleged release of Curl H. Phillips submitted for his consideration and that he acted without granting the said Curl H. Phillips any opportunity to be heard prior to the granting of said letters to the said George W. Phillips, and he believed that an opportunity for a fair hearing should be given to both of said claimants.

Without disposing of the *caveat* against Curl H. Phillips, which operated for ten days after its filing as a stay against the granting of letters to Curl H. Phillips or any other person, including the *caveator*, even though no bond had been filed, the register granted letters of administration to the *caveator*. Thus Curl H. Phillips was deprived of his day in court and his right to be heard on the facts as to the objections urged against his fitness to be appointed and as to whether or not the alleged release was a bar to his right to have letters of administration.

The court, at the hearing on appeal, permitted evidence to be taken for the purpose of showing the circumstances under which the paper marked Exhibit "A," page 37 of the testimony, was executed and delivered by Curl H. Phillips to the said Isabelle Phillips. Curl H. Phillips, apparently disappointed at not receiving more money from his father's estate, kept demanding from his mother from time to time that she give him the $1 that was bequeathed to him. He was a soldier in the Spanish-American War and had given his mother to keep for him $200 of money he drew while in the army, $425 he earned working on a mailroute for M. M. Thompson, and $200 he earned working on an engineering corps, in all about $880.76 (page 8). Decedent admitted that she owed Curl over $800, part of which he got before he went to the Philippines. See testimony of Louie Guseman, page 16.

He asked his mother for this money, and the dollar bequeathed to him, frequently, but she denied owing it to him, and that started trouble between them, and he says it would cause him to take to drinking. She appeared to have refused to pay him his money, claiming that she had raised him and was entitled to the money.

It is claimed that the release, Exhibit "A," needs no explanation, that its meaning is apparent, and there are no latent ambiguities to be reconciled in order to understand the writing. In view of the above-recited facts, the paper might bear either of two constructions. It may be construed to be a release of any and all claims that he might assert on account of the money claimed by him from his mother and an agreement not to molest or disturb her in the future. It is not at all clear, nor does the language of the paper sustain the contention of the appellant, that it was intended to be a release

of all interest of the appellee in his mother's estate. The evidence taken before the court was for the purpose of ascertaining, if possible, which of these two purposes was in the minds of the parties at the time the paper was executed.

About the time the paper was executed, Oct. 26, 1907, Curl claimed his mother owed the aforesaid sum of money, and they had some trouble about it and went to 'Squire J. L. Rea's office and stated to him that they had settled their difficulties and asked him to draw up a paper by which Curl would agree to treat his mother properly in the future and behave himself properly toward her. Subsequent to the execution of this paper, Louie Guseman, who was well acquainted with decedent, testified that she talked with her about her business and asked her "why she didn't make a will, and she said when she was gone it would be divided any way" between the children, and that decedent had mentioned the matter more than once. Flossie Fiett testified that she was nursing Mrs. Phillips at one time and Mrs. Phillips told her to get the paper, Exhibit "A," that she wanted to see it and wanted the witness to see it. Mrs. Phillips "said she had that paper, but it didn't amount to anything. She just had it to scare Curl, and I asked her to go ahead and get her business straightened up, and she said it would be all right."

Another witness, Agnes Baker, said Isabelle Phillips exhibited the writing to her, and she "said the paper wasn't worth the paper it was wrote on." Mrs. Louie Kuhn said she often talked to decedent relative to the disposition she would make of her property after her death, and she said "it was hers while she lived and then it went to the children."

Bigler Miller says when she was sick in bed and was talking about dying, "I said, why don't you make a will and will it to the two boys?" She said, "I reckon they will get it anyhow." "We got to talking about this paper (Exhibit "A"); she said it wasn't worth the paper it was written on."

'Squire Rea said he had a conversation with Curl H. Phillips, shortly after his mother's death, about the paper, and he asked the 'squire if he still had it, and, in speaking about his right to participate in his mother's estate, he said "he didn't know whether he had any rights or not."

Curl H. Phillips says he refused to sign a paper (a renunciation) which 'Squire Rea asked him to sign shortly after his mother's death and before letters were granted to George W. Phillips.

### Discussion.

From the above facts we are to determine whether or not the register improvidently granted letters to George W. Phillips? Whether or not it was within his power to revoke the said letters?

Did Curl H. Phillips, by executing the paper dated Oct. 26, 1907, release all his rights as an heir-at-law in the estate of his mother?

In the first instance, we have the register's own opinion that his appointment of appellant as administrator was prematurely and inconsiderately made.

The register had power under the Act of March 15, 1832, P. L. 135, and Fiduciaries Act of June 7, 1917, P. L. 447, to grant letters of administration to the surviving spouse, and in certain cases to such relations or kindred, or such one or more of them, as he shall judge will best administer the estate, preferring always of those entitled, such as are in the nearest degree of consanguinity with the decedent, and also preferring males to females. The Act of May 13, 1925, P. L. 687, eliminated the words "and also preferring males to females."

There is nothing in either of these three acts that requires the register to observe the rule of appointing the oldest child, or what is known as the rule of primogeniture. "Primogeniture gives no right of preference so as to weigh against the wish of the majority of interests, yet if things are precisely equal—if the scale is exactly poised—being the elder brother would incline the balance:" Brubaker's Appeal, 98 Pa. 21, 24. The register states if there had been a hearing on the *caveat* and petition filed by appellant, and he had been convinced that Curl H. Phillips was in all respects a proper person to appoint, and was not barred of his right to administer by the paper dated Oct. 26, 1907, he would have observed the above-recited rule. The register, in exercising his discretion, could, and in proper cases should, disregard this rule or practice, but its general application, where other things are equal, should have some weight in determining his appointment. It was likewise a practice to require a renunciation of the eldest of a class before appointing a younger applicant in the same class.

We are also of the opinion that under sections 20 (a) and 20 (b) of the Register of Wills Act of June 7, 1917, P. L. 415, the *caveat* filed by the appellant in this case operated as a stay against Curl H. Phillips for the full ten days after the *caveat* was filed, that being the time within which appellant could file his bond and continue his *caveat* in force thereafter, as required by the act.

"The office of the *caveat* is to arrest the proceedings until the truth of the facts alleged or affecting the validity of the will can be determined and it inures to the benefit of all parties interested in the subject (Ottinger *v.* Ottinger, 17 S. & R. 143), and a *caveat* separately filed by each heir-at-law or other person interested is unnecessary. Each heir-at-law has the right to an issue if he can show facts that would sustain a verdict against the will: Schwilke's Appeal, 100 Pa. 628. This right is saved to all, however, by the *caveat* of any one of these persons filed within the proper time, since all the others may be, and must be, joined or afforded an opportunity to join, in the contest:" Miller's Estate, 166 Pa. 97, 109.

"*Caveat*, let him beware, is a notice given by a party having an interest, to some officer not to do an act till the party giving the notice has a chance to be heard, as to the register of wills . . . not to grant letters of administration . . . until the objections can be heard:" Kenyon *v.* Stewart, 44 Pa. 179, 190. Here, the *caveator* takes advantage of a right he has to prevent Curl H. Phillips from taking out letters for ten days, and within that period *caveator* petitions for and is granted the letters without notice to him. No hearing should have been had within said ten days' period unless by agreement of the parties, and no action should have been taken by the register within that period without an opportunity granted to Curl H. Phillips to be heard. The granting of letters to the *caveator* within that period was, under the circumstances, prematurely and inconsiderately done. An improvident decree has been defined to be "one which has been prematurely or inconsiderately made:" Hawkins, Orphans' Court Practice, § 28, page 32.

Was it within the power of the register to revoke letters granted to appellant? Section 5 of the Register of Wills Act of June 7, 1917, P. L. 415, provides that "any register of wills shall have power to revoke letters of administration granted by him whenever it shall be made to appear to him that such letters have been granted to, or on the nomination of, persons who are not the next of kin of the decedent entitled to administer, or whenever, after the granting of letters of administration, a will of the decedent shall be duly proved and admitted to probate."

Phillips's Estate.    No. 2.

The commission who drew up this act of assembly, in its note relating to this section, says as follows: "This is a new section, intended to be declaratory of the existing law and to remove any possible doubt as to the original jurisdiction of the register *in the cases* mentioned, as distinguished from the revocation of letters testamentary." Prior to the Act of 1917, it had become the established practice in this State for the register to revoke letters of administration wrongfully and improvidently granted by him: McCaffrey's Estate, 38 Pa. 331; Hermes's Estate, 32 Pitts. L. J. 474; Williams's Appeal, 7 Pa. 259; Comfort's Estate, 12 Pa. C. C. Reps. 571; Harman's Estate, 1 Lanc. Law Rev. 204; Neidig's Estate, 183 Pa. 492.

The application to revoke letters of administration should be made to the register of wills and not to the Orphans' Court: Dundas's Estate, 15 Dist. R. 90; Sudam's Estate, 3 W. N. C. 305; Farrell's Estate, 1 W. N. C. 15. If the power to revoke letters of administration in such cases as this does not rest with the register, no court has such power. In Wehry's Estate, 47 Pa. C. C. Reps. 486, the court held that the register of wills, and not the Orphans' Court, is vested with the power of revoking letters of administration when improvidently granted by him, saying in its opinion: "It is unnecessary to discuss the merits of this case, because the procedure is not in accordance with established practice." As was said in the following case: "The register acted with precipitancy in the first instance in granting letters of administration to Jonathan Bieber. . . . He ought to have cited the parties before him and have given them notice, when either of the parties could have had the decision of the register's court. All *ex parte* proceedings in judicial matters should be avoided:" Bieber's Appeal, 11 Pa. 157, 162.

Likewise, in Sharpless's Estate, 28 Dist. R. 746, 748, a case in which letters of administration were revoked by the register of wills because they had been previously granted upon a misrepresentation or misunderstanding of the relationship to decedent of the applicants for appointment, the court says: "These decisions, and many others of like import, establish the right of the register to revoke in the instances cited, in the absence of any direct statutory enactment giving him that power. And if section 5 of the Act of 1917 referred to was merely intended to be declaratory of the existing law, we seriously question whether the register is not limited in his power to revoke letters in the two instances cited in section 5. He has said in the order filed revoking the letters that he does it 'to correct an honorable misunderstanding in the granting of the letters in the first instance.' Of the four reasons given by him in his order, this is the only one to which we are inclined to give serious consideration. The others seem to us to be without weight, and alone would not justify his decree."

The register, in his opinion filed in the instant case, was evidently following Sharpless's Estate, *supra*, and he uses language quoted from that case, stating that he is revoking the letters "to correct an honorable misunderstanding in the granting of letters in the first instance." The Fiduciaries Act of June 7, 1917, § 53 (a), P. L. 447, provides therein nine reasons for which the court can remove an administrator or other fiduciary, and all of these reasons are based on matters which occur subsequent to the appointment of the administrator or trustee, such as wasting or mismanaging the estate, failing to exhibit accounts, becoming a lunatic or weak-minded person, or otherwise incompetent to discharge the duty, removal from the State, and other similar causes. The Orphans' Court Act of June 7, 1917, § 9, P. L. 363, provides that "the jurisdiction of the several Orphans' Courts, whether separate or otherwise, shall extend to and embrace (a) the control, removal and discharge of

executors and administrators deriving their authority from the register of the respective counties. . . ."

"The ground of proceeding was that the letters had been improvidently granted to the appellant without notice to and in contravention of the rights of those legally entitled to administration. This was for cause antecedent to the grant of letters, and, if not directly within the Act of Assembly of 1832, has been sanctioned by practice. . . . We have no doubt but that a register's court can vacate letters of administration: . . . Stoever v. Ludwig, 4 S. & R. 201:" McCaffrey's Estate, 38 Pa. 331, 333.

It was the duty of the register of wills in his discretion to select an administrator, and, after his discretion had been properly exercised, we would certainly not interfere with it, but he acted, as he says himself, improvidently and without notice to Curl H. Phillips and in so doing he deprived the said Curl H. Phillips of his right to be heard, and the register himself was the proper person to revoke this action. In Kern's Estate, 212 Pa. 57, 59, the right of the register of wills to revoke letters of administration after a will was found was disputed. The court said, in discussing the question of letters improvidently granted and notice, as follows: "The existence of a valid will and its probate determine conclusively that the letters of administration were improvidently granted and should be revoked. Why, then, should not the register revoke them? It is simply a formal, though a mandatory, act. The parties interested are all heard when the will is probated. When it is presented, the register should not act ex parte, but issue a citation to all parties interested in the estate, and they may then be heard as to the validity of the will and the consequent right to issue letters testamentary. If any person is aggrieved by the action of the register, he can have his rights determined in the usual way by an appeal."

So far as the register undertook to determine the meaning of the alleged release as a bar to the right of Curl H. Phillips to administer, he had power, under section 19 of the Register of Wills Act, to certify the entire record to this court as a disputable and difficult matter for its determination.

It is contended by appellant that the only cases in which the register has a right to revoke letters improvidently granted are those specified in section 5 of the Act of June 7, 1917, P. L. 415: *(a)* Letters granted to persons who are not next of kin, and *(b)* where, after granting letters of administration, a will is found. The law in these two instances was precisely so decided prior to this act. It is also argued that the maxim *"expressio unius est exclusio alterius"* applies to the construction of statutes such as this (Com. v. Cuncannon, 3 Brewster, 344), and that it is presumed in the construction of such a statute that it embodies all the instances in which power is to be exercised by such an officer, and the power not expressly given is, therefore, prohibited to him. In other words, since there is express mention of two cases in which the register has express jurisdiction, there is an implied exclusion of his power to revoke letters for any other reason. But it is said in 36 Cyc., 1122: "The maxim should be applied only as a means of discovering the legislative intent and should never be permitted to defeat the plainly-indicated purpose of the legislature."

Prior to the enactment of 1917, the two classes of cases covered by the act had been repeatedly before the courts, as illustrated in the recent cases of Neidig's Estate, 183 Pa. 492, where the right to revoke letters granted to persons not next of kin was disputed, and in Waltz's Appeal, 242 Pa. 167, where the right to revoke letters after a will was produced and probated was disputed.

Was the paper of Oct. 26, 1907, a release of the right of Curl H. Phillips to administer?

The consideration of this question was for the register in the first instance, and, while it might not be now for the consideration of the court, it will be considered as though it had been certified to the court under section 19 of the Register of Wills Act as a disputable and difficult matter in controversy for determination.

In view of the facts as we have found them to be, this court has arrived at the conclusion that the paper was executed as a release to Isabelle Phillips of all claims of the said Curl H. Phillips that he then had or might thereafter have against her property or the money which he claimed she had received from him and an agreement on his part to forego his right to demand payment of the same from her. The wording of the paper itself will support this construction, based on the fact alone that she had his money in her hands and claimed the right to withhold payment from him. When we consider the additional fact that she declared in effect and on several occasions that it did not affect his right to claim his share of her estate and that he would participate equally with his brother in her estate, we can readily conclude that it was not intended to bar his right to claim as her heir. Curl H. Phillips was not a good witness, but he made it sufficiently clear that he had a money claim against his mother and that he intended by the paper, Exhibit "A," to release his claim against her and her property.

We believe that the testimony of Curl H. Phillips to these facts was competent and relevant because he was not a surviving party to the thing or contract in action within the prohibition of clause (e) of section 5 of the Act of May 23, 1887, P. L. 158, and he comes within the exception that where the controversy is "between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." See Allen's Estate, 207 Pa. 325.

Nor was the objection to the testimony of the witnesses who testified to the declarations of decedent well taken. "If there is anything well settled, it is that the rule excluding hearsay evidence does not apply to oral or written declarations of deceased persons made against their interest" (Taylor v. Gould, 57 Pa. 152), even if the testimony in this case could be construed as against the interest of decedent.

The alleged release, being for $1, was without sufficient consideration, and, moreover, the construction contended for by the appellant violates the presumption in favor of the rule of equality between children: Morris et al. v. Carlin, 5 Dist. R. 714.

A strict construction of the paper as contended for by appellant would only operate as an assignment of the interest of Curl H. Phillips in the real and personal estate which the decedent had at the time, and the testimony of Frank Huston is that decedent acquired something like $8000 after the alleged release was executed.

We, therefore, conclude:

1. That the register acted improvidently in granting letters to appellant without giving appellee an opportunity to be heard.

2. That the paper of Oct. 26, 1907, was not a release of the expectancy of Curl H. Phillips in his mother's estate.

3. That, if there was no other objection or other cause shown, the register might have, in the proper exercise of his discretion, issued letters to Curl H. Phillips.

4. That it was, therefore, proper for the register to revoke the letters improvidently granted to George W. Phillips, and, after proper hearing and notice, to grant letters to some fit person legally entitled thereto.

And now, Oct. 31, 1927, it is ordered and decreed that this appeal be dismissed and the record is remanded to the register of wills with direction that he proceed to hear and determine, after due notice, the relative claims of the parties to this controversy and determine, in his discretion, to whom the letters of administration in this case should be issued, as required by law and the act of assembly in such case provided.

From S. M. Williamson, Waynesburg, Pa.